**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § <br> § <br> § |
| *Plaintiff,* | § <br> § |
| **v.** | §   **CIVIL ACTION NO. 4:19-cv-03603** <br> § |
| **WAL-MART STORES TEXAS, LLC.,** | § <br> § |
| *Defendant.* | § |

---

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
MEMORANDUM IN OPPOSITION TO WAL-MART'S
MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

By:    /s/ Lloyd Van Oostenrijk
        Lloyd Van Oostenrijk
        Trial Attorney
        Attorney-in-Charge
        Texas Bar No.: 24056467
        Federal Bar No.: 695844
        1919 Smith Street, 7th Floor
        Houston, Texas 77002
        (346) 327-7718
        Fax: (713) 651-7995
        lloyd.vanoostenrijk@eeoc.gov

        ATTORNEY FOR PLAINTIFF

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing instrument was served via the Court's ECF filing system, on May 21, 2021, on counsel of record for the Defendant.

        /s/ Lloyd Van Oostenrijk
        Lloyd Van Oostenrijk

## TABLE OF CONTENTS

I.    INTRODUCTION ……………………………………………………....1

II.   NATURE AND STAGE OF THE PROCEEDINGS ………………………...2

III.  SUMMARY OF THE ARGUMENT……………………………………….....2

IV.   PLAINTIFF'S MATERIAL FACTS SUPPORTING
      THE DENIAL OF SUMMARY JUDGMENT………………..………………4

V.    ARGUMENT & AUTHORITIES ……………………………..………12

      A.  Standard of Review …………………………………………………...13

      B.  Fact Issues Exist as to the Elements of the EEOC's Prima Facie Case
          for its ADA Failure-to-Hire Claim Precluding Summary Judgment ……………14

      C.  Landry Has a Disability and Was a Qualified Individual with
          a Disability under the ADA …………………………………………...15

          1.  Defendant's Decision not to Hire
              Landry was Motivated by Landry's Disability………………………16

          2.  Defendant Regarded Landry as Disabled and was Motivated
              By that Perception………………………………………………18

          3.  Evidence Exists that Landry was qualified to perform
              the duties of a Stocker or other position involving
              loading and unloading boxes ……………………………………..19

      D.  Walmart's Failure to Hire Landry was an Adverse Employment Action ………20

      E.  Walmart's Proffered Reasons for not hiring Landry are Pretextual ……………22

      F.  Walmart's managers' actions and inaction(s) are sufficient to support
          an award of punitive damages …………………………………………...24

VI.   CONCLUSION …………………………………………………...25

## APPENDIX

Exhibit A:      Jesse Landry Deposition, Vol. I

Exhibit B:      Kathy Brogden Deposition, Vol. I

Exhibit C:      Greg Brown Deposition, Vol. I

Exhibit D:      Melissa Carrasco Deposition, Vol. I

Exhibit E:      Christina Cox Deposition, Vol. I

Exhibit F:      Dana Everett Deposition, Vol. I

Exhibit G:      Larry Gulick 30(b)(6) Deposition, Vol. I

Exhibit H:      Debra Thomassie-Henderson Deposition, Vol. I

Exhibit I:      Jennifer Vivian Deposition, Vol. I

Exhibit J:      Adrienne (David) Young Deposition, Vol. I

Exhibit K:      Declaration of Lloyd S. van Oostenrijk dated May 21, 2021

Exhibit 1:      Jesse Landry letter to EEOC dated September 29, 2015

Exhibit 2:      Jesse Landry Charge of Discrimination dated October 15, 2015

Exhibit 3:      Walmart Position Statement dated February 18, 2016 with attachments

Exhibit 4:      EEOC letter to Caleb Patterson seeking information dated May 25, 2016

Exhibit 5:      EEOC letter to Caleb Patterson seeking information dated June 13, 2016

Exhibit 6:      Walmart Position Statement dated August 15, 2016 with attachments

Exhibit 7:      EEOC letter to David Dixon seeking information dated November 7, 2016

Exhibit 8:      EEOC Request for Information dated December 12, 2016

Exhibit 9:      Walmart position statement dated January 19, 201[7]

Exhibit 10:     Email from Walmart's counsel to EEOC investigator dated April 6, 2017

Exhibit 11:     Walmart response to EEOC request for information dated June 23, 2017

Exhibit 12:     Letter from EEOC investigator dated December 7, 2017, seeking additional information, including where in Store 0400 Jesse Landry's interview folder was discovered.

Exhibit 13:     EEOC Letter of Determination dated May 14, 2018

Exhibit 14:     Walmart Policy CPG 1201 Hiring Overview

Exhibit 15:     Job Description-Stocker (eff. 6-26-15 to present)

Exhibit 16:     Store #400 Management from 5-1-15 to 8-31-15

Exhibit 17:     Store #400 Hourly Associates from 5-1-15 to 8-31-15

Exhibit 18:     Hourly Associates Hired Store #400 from 5-1-15 to 8-31-15

Exhibit 19:     WM Store #400 – Department Mgrs, CSMS from 5-1-15 to 8-31-15

Exhibit 20:     Personnel Department Associates at Store 400 from July 12, 2015 through July 18, 2015

Exhibit 21:     Walmart's Responses to EEOC's Second Set of Requests for Admission dated October 5, 2020

Exhibit 22:     Training Records of Kathy Brogden

Exhibit 23:     Training Records of Melissa Carrasco

Exhibit 24:     Time Card Archive Report of Kathy Brogden for July 11, 2015 through July 24, 2015

Exhibit 25:     Employment History of Kathy Brogden

Exhibit 26:     Guide – Career Preference – CPG-1201 – Hiring Overview (eff 10-15-15 to 1-19-17)

Exhibit 27:     Time Card Archive Report for Christina Cox from June 27, 2015 through July 10, 2015

Exhibit 28:     Time Card Archive Report for Debra Henderson from June 27, 2015 through July 24, 2015

Exhibit 29:     *EEOC v. Boh Bros. Constr. Co., LLC*, No. 09-6460, 2011 U.S. Dist. LEXIS 91011 *5 (E.D. La. Aug. 16, 2011)

Exhibit 30:     *EEOC v. Wal-Mart Stores, Inc.*, No. 98-2122, 1999 U.S. App. LEXIS 33144 *2-17 (10th Cir. Dec. 21, 1999)

Exhibit 31:     *EEOC v. Wal-Mart Stores Texas, LLC*, No. H-18-3407, 2020 U.S. Dist. LEXIS 78130 *11-12 (S.D. Tex. Apr. 27, 2020)

Exhibit 32:     *McKay v. Johanns*, 265 F.App'x 267 (5th Cir. 2008)

Exhibit 33:     *O'Quinn v. Hallmark Toyota-BMW, Inc.*, No. 3:06-00192-DPJ-JCS, 2008 U.S. Dist. LEXIS 132085 *10, 2008 WL 11380130 (S.D. Miss. Feb. 7, 2008)

Exhibit 34:     *Periman v. City of Taft*, No. C-11-77, 2011 U.S. Dist. LEXIS 55920 *2-3 (May 25, 2011)

Exhibit 35:     *Presta v. Omni Hotel Mgmt. Corp.*, No. 4:17-cv-912, 2018 U.S. Dist. LEXIS 60998, *28-29 (S.D. Tex. Apr. 4, 2018)

Exhibit 36:     *Williams v. Tarrant Cty Coll. Dist.*, 717 F. App'x 440 (5th Cir. 2018)

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ……………………………………………13

*Armstrong v. Turner Indus., Inc.* 141 F.3d 554 (5th Cir. 1998) ………………………………..17

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ………………………..21

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ……………………………………………………13

*Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294 (4th Cir. 1998) …………………………………25

*EEOC v. Boh Bros. Constr. Co., LLC*, No. 09-6460
2011 U.S. Dist. LEXIS 91011 *5 (E.D. La. Aug. 16, 2011) …………………………………17

*EEOC v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir. 2014) …………………………….....3, 14, 20, 21

*EEOC v. Texas Bus Lines*, 923 F.Supp. 965, 975 (S.D. Tex. 1996) ……………………………19

*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002) ………………………………………17

*EEOC v. Wal-Mart Stores, Inc.*, 11 F.Supp.2d 1313 (D.N.M. 1998) ………………………..20, 25

*EEOC v. Wal-Mart Stores, Inc.*, 156 F.3d 989 (9th Cir. 1998) …………………………………25

*EEOC v. Wal-Mart Stores, Inc.*, No. 98-2122,
1999 U.S. App. LEXIS 33144 *2-17 (10th Cir. Dec. 21, 1999) ………………………………...25

*EEOC v. Wal-Mart Stores Texas, LLC*, No. H-18-3407,
2020 U.S. Dist. LEXIS 78130 *11-12 (S.D. Tex. Apr. 27, 2020) ……………………………..3

*Fierros v. Texas Dept. of Health*, 274 F.3d 187 (5th Cir. 2001) …………………………....14

*Hayden v. First Nat'l Bank of Mt. Pleasant, Texas*, 595 F.2d 994 (5th Cir. 1997) ……………..14

*Houston Police Officer's Union v. City of Houston*, 330 F.3d 298 (5th Cir. 2003) ……………13

*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) ……………………………………21

*McKay v. Johanns*, 265 F.App'x 267 (5th Cir. 2008) ……………………………………………...21

*Nall v. BNSF Railway Co.*, 917 F.3d 335 (5th Cir. 2019) …………………………....3, 14, 21

*O'Quinn v. Hallmark Toyota-BMW, Inc.*, No. 3:06-00192-DPJ-JCS
2008 U.S. Dist. LEXIS 132085 *10, 2008 WL 11380130 (S.D. Miss. Feb. 7, 2008) ………...…15

*Periman v. City of Taft*, No. C-11-77, 2011
U.S. Dist. LEXIS 55920 *2-3 (May 25, 2011) ……………………………………...……17, 18

*Peyton v. City of Yazoo City*, 764 F.Supp.2d 831, 840 (S.D. Miss. 2011) ………………...…21

*Pinkerton v. Spellings,* 529 F.3d 513 (5th Cir. 2008) ………………………………………...14

*Presta v. Omni Hotel Mgmt. Corp.*, No. 4:17-cv-912,
2018 U.S. Dist. LEXIS 60998, *28-29 (S.D. Tex. Apr. 4, 2018) ………...……….3, 15, 21, 22

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ……………………4, 14, 23

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) …………………….....15

*School Board of Nassau County v. Arline*, 480 U.S. 273 (1987) …………………………...19

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ……………………………………13

*Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2002) …………………………...14, 15

*Williams v. J. B. Hunt Transp., Inc.*, 826 F.3d 806 (5th Cir. 2016) ………………………3, 14, 21

*Williams v. Tarrant Cty Coll. Dist.*, 717 F. App'x 440 (5th Cir. 2018) …………………………18

**Statutes**

42 U.S.C. § 1981a(b) ………………………………………………………………24

42 U.S.C. § 12101 *et seq.* ……………………………………………………………1

42 U.S.C. § 12102 …………………………………………………………...2, 16, 18

42 U.S.C. § 12111 …………………………………………………………………2, 16

42 U.S.C. § 12112 …………………………………………………………………3, 17

**Regulations**

29 C.F.R. § 1630.2(h) ………………………………………………………...…16

29 C.F.R. § 1630.2(j)(3) ……………………………………………………………....16

29 C.F.R. Part 1630 ……………………………………………………………...19

**Rules**

Fᴇᴅ. R. Cɪᴠ. P. 56 ……………………………………………………………………..13

Fᴇᴅ. R. Eᴠɪᴅ. 801 ………………………………………………………………11, 16

## I.      INTRODUCTION

Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission") submits this Memorandum in Opposition to Walmart's ("Walmart" or "Defendant") Motion for Summary Judgment ("Motion").  For the reasons set forth more fully below, Defendant's Motion should be denied because the EEOC has established that genuine issue of material facts exists as to each element of its claims.

The EEOC brought this suit (Dkt No. 1) under Title I of the Americans with Disabilities Act, *as amended,* ("ADA") 42 U.S.C. 42 U.S.C. §§ 112101*et seq.* and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Jesse Landry ("Landry"), a qualified person with a disability.  Specifically, the EEOC alleges that Defendant refused to hire Landry because of her disability, congenital amputee.  The summary judgment evidence in this cases establishes that genuine issues of material fact exist as to each element of the EEOC's prima facie case for failure to hire because of disability, including pretext, and that the genuine material fact exist as to whether the EEOC is entitled to obtain punitive damages on behalf of Landry.

In arguing the legal standard for disability claims by which the court should determine the Motion, Walmart misstates the applicable prima facie case burden of proof under both the direct and circumstantial evidentiary standard.  Moreover, because Walmart has conceded the first two elements of the EEOC's claim, the only element of proof remaining is whether the EEOC has presented genuine issues of material fact that Walmart failed to hire Landry for a position while continuing to seek other applicants.

1

## II.    NATURE AND STAGE OF THE PROCEEDINGS

In this ADA action, the Commission alleges Defendant Walmart refused to hire Landry, a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8), in violation of 42 U.S.C. §§ 12112(a) and (b).  (*Id.*).

Discovery closed in this suit on March 31, 2021.  (Dkt. No. 48).  Following an Unopposed Motion for Extension of Time, the Court moved the dispositive motions deadline to April 30, 2021, and pretrial motions to May 28, 2021.  (Dkt. 50).

On April 30, 2021, Defendant filed a twenty-one-page Motion for Summary Judgment and twenty-page Memorandum of Law (hereafter jointly called "Motion") asserting it is entitled to judgment as a matter of law on the basis that Plaintiff cannot establish a prima facie case.[1]  (Dkt. 51 and 52). The Motion should be denied.

## III.    SUMMARY OF THE ARGUMENT

For purposes of its Motion, Defendant does not dispute that Landry "met with an hourly supervisor" (Dkt. 51, Pg. 14, fn. 2);[2] that she has a disability or was perceived as having a disability; or that she was qualified for the position for which she applied.  (Dkt. 52, Pg. 11, fn. 6). Defendant claims that the EEOC cannot show Landry was subjected to an adverse employment action on account of her actual or perceived disability and was treated less favorably than employees without disabilities.  (Dkt. 52, Pg. 11).  This misstates the Plaintiff's prima facie case.

Walmart glosses over whether statements made by the interviewer could be direct evidence and the fact that at least one other manager was involved in the decision not to interview Landry

---

[1]  The Commission notes that this court's procedures require any brief or memorandum to be limited to 25 pages without leave of court.  Nothing in the record here suggests that Walmart sought leave of court to file in excess of 40 pages as its motion and brief. For this reason, the EEOC requests the strike the Defendant's Motion.

[2]  Throughout its Motion, Walmart refers to this as a "meeting". An interview is a face-to-face meeting. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 689 (New College Edition 1980).

further.  The statements provide direct evidence of disability discrimination and raise genuine issues of material fact.  The undisputed evidence Walmart minimizes is that Landry was twice asked if she thought she could do the job with her disability and then was told that the interviewer and her manager would try to find Landry a position that was "better equipped" for her disability. Walmart tries unsuccessfully to portray this as a permissible pre-offer inquiry involving an applicant with an apparent disability.  42 U.S.C. § 12112(d)(3).  Moreover, Walmart took the contrary position just a year ago arguing that Walmart had no knowledge of Landry's disability whatsoever; a claim which this court rightly rejected, noting the apparent nature of Landry's disability.  *EEOC v. Wal-Mart Stores Texas, LLC*, No. H-18-3407, 2020 U.S. Dist. LEXIS 78130 *11-12 (S.D. Tex. Apr. 27, 2020). Walmart's shifting positions regarding its interactions and treatment of Landry therefore raise credibility issues as well as disputed issues of fact.

But even if this court were to apply the circumstantial rather than the direct evidence analysis, Defendant has misstated the appropriate *prima facie case* standard that is set forth by the Fifth Circuit in 2014.  It held that in order to establish the causal element, an applicant need only show that the applicant's disability played a role in the employer's decision-making process and had a determinative influence on the outcome.  The appropriate prima facie standard only requires a plaintiff to show: (1) she has a disability or was regarded as disabled; (2) she was qualified for the job; and (3) she was subject to an adverse employment action because of her disability.  *EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014); *Nall v. BNSF Railway Co.*, 917 F.3d 335, 341 (5th Cir. 2019); *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016).  And a failure to hire—or even to refuse to call a plaintiff back to work—can be an adverse employment action.  *Presta v. Omni Hotel Mgmt. Corp.*, No. 4:17-cv-912, 2018 U.S. Dist. LEXIS 60998, *28-29, 33 Am. Disabilities Cas. (BNA) 1682 (S.D. Tex. Apr. 4, 2018).

3

Having conceded the first two elements of the EEOC's prima facie case, Walmart now admits Landry had a "meeting" with a department manager at Store 0400 but claims Landry could not have signed her job application while she was there. This, of course, ignores the testimony and evidence in this case, including the existence of Landry's interview packet and Walmart's prior admission that Landry was interviewed but not selected for a stocker position contained in its first position statement to the Commission. Walmart claims that Landry's name appeared in 36 subsequent requisitions but has no explanation for why, Landry was never interviewed for any of those requisitions either. These facts, coupled with the statement that Landry's interviewer and her manager would find a position "better equipped" for Landry's disability and not doing so, present disputed issues of material fact as to the elements of the EEOC's prima facie case.

Ironically, Walmart posits an argument it has used before that: Walmart's policies structuring its interview process shields it from punitive damages. (Dkt. No. 52, Pgs. 24-25). But Walmart has tried and lost similar arguments in the past, even in one case involving a traumatic amputee applicant.

The finder of fact should be free to examine the testimony and evidence in light of Walmart's shifting versions of events and infer that Walmart is prevaricating. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147-148 (2000). And the Commission's summary judgment evidence supports such an inference. Thus, the EEOC has presented sufficient evidence to raise genuine issues of material fact as to whether Walmart's explanation is a pretext for discrimination.

## IV.   PLAINTIFF'S MATERIAL FACTS SUPPORTING THE DENIAL OF SUMMARY JUDGMENT.

Jesse Landry was born missing part of her right forearm and hand. (Ex. 1). In July 2015, Jesse Landry was a sophomore at Sam Houston State University studying kinesiology. (Ex. A, Landry Depo. at 21:11-13; Ex. 3, Pg. 12, Walmart Initial Position Statement to EEOC). Her work

experience consisted of having worked for her parents' adoption agency and working in the Sam Houston college bookstore, owned and operated by Barnes & Noble.  (Ex. A at 22:24-25, 23:1-5; Ex. 6, Pg. 16, Walmart Position Statement dated August 15, 2016).  Landry was earning $7.25 an hour as a cashier at the bookstore and her work included stocking books.  (Ex. A at 45:21-25, 46:1-9; Ex. 3, Pg. 16).

On May 8, 2015, and again on July 8, 2015, Landry completed separate online applications, specifically for Store 0400 in Conroe, Texas.  (Ex. 3, Pgs. 3 and 12).  She also successfully completed the online assessment required of all applicants before they can be interviewed.  (*Id.*; Ex. 21, Nos. 1, 3, and 5, Defendant's Responses to Plaintiff's Second Set of Requests for Admission).  Landry received a telephone voicemail to schedule an interview.  (Ex. A at 34:14-25; 60:2-25, 61:1-23).  Landry called the Walmart employee back and scheduled the job interview.  (Ex. A at 61:1-25, 62:1-25, 63:1-30).  Landry testified the Walmart employee gave her options to interview on either July 13 or 14 and Landry chose July 14.  (Ex. A at 63:10-13).  The employee instructed Landry to go to the back of the store and let someone know she was there for a job interview.  (Ex. A at 62:21-24).  Landry was not told that she needed to ask for anyone specifically. (Ex. A. at 62:25, 63:1-2).

Walmart never identified the interviewer or scheduler to the EEOC. There are multiple possibilities.  (Exs. 16, 19, 20).  Although Walmart has asserted that neither its personnel coordinator (Christina Cox) nor its training coordinator (Debra Henderson)—the individuals who usually scheduled interviews—were working on Sunday, July 12, 2015, Landry testified the call could have occurred on July 11th or July 12th.  (Ex. A at 34:17-20).  The evidence shows that the training coordinator, Debra Henderson, was working on Saturday, July 11, 2015.  (Exs. 20, 28) Furthermore, Melissa Carrasco testified she helped in Human Resources at one point and even

5

scheduled interviews with applicants.  (Ex. D, Carrasco Depo. at 36:2-16).  Moreover someone, on July 13, 2015, printed Landry's interview packet.  (Ex. 6).  And on July 14th, Landry appeared for her scheduled interview.

Landry went to Store 0400 on July 14, 2015 and went to the back of the store as she had been instructed.  (Ex. A at 64::2-9).  Multiple Walmart employees testified in deposition that applicants are instructed to go to the layaway desk at the back of the store and let the staff know they are there for a job interview.  (Ex. H, Henderson Depo. at 144:11-24; Ex. F, Everett Depo, at 34:1-7; Ex. E, Cox Depo., at 30:7-11).  No one was at the layaway area to greet Landry, so she told an employee passing by that she was there for an interview.  (Ex. A at 10-13).  Landry saw no other applicants at that time.  (Ex. A at 14-16).  Landry testified that when the interviewer came to get her, the interviewer took her down a hallway through big black doors and into a small office. (Ex. A at 64:20-25).  No one else was in the office with the interviewer and Landry.  (Ex. A at 65:3-5).  No one else came in during the interview.  (Ex. A at 65:5-7).  The interviewer told Landry that she was the electronics manager and had just been promoted (Ex. A at 65:10-15) and then started with the interview questions (*Id.*).  Landry could not see what papers the interviewer had in her hand.  (Ex. A at 16-18). According to Walmart, the position Landry interviewed for was a stocker position. (Ex. 6 and Ex. 15 Stocker Job Description).

Landry described the interviewer as being a woman, possible five-foot-two to five-foot-four in height, with pink highlights in her hair, wearing Capri pants, and with a tattoo on her ankle. (Ex. A at 65:25, 66:1-9).  Landry testified that she wanted "to say it was Winnie the Poo.  I just know it was like a cartoon character."  (Ex. A at 65:10-12)  Landry testified the tattoo was in color and that it was on the woman's left leg, "close by, like, her ankle."  (Ex. A at 65:13-17).

Landry testified the interviewer described the job to her as involving "picking up boxes and putting them on, like, little carts behind us" (Ex. A, 67:25, 68:1-3) and asked whether Landry could work overnight (Ex. A, 76:3-5). Landry stated that the woman asked her directly, "do you think you can do that with your disability?" (Ex. A at 68:3-4). Landry said she could, pointing out that she picked up boxes of books at her job with Barnes & Noble. (Ex. A at 68:5-6). The interviewer responded, "[w]ell if you think you can do it, then more power to you." (Ex. A. at 68:7-8). The interviewer again asked if she was sure Landry could do the job with her disability. (Ex. A at 68:12-14). Landry testified the interviewer then moved on to asking about her work ethic. (Ex. A at 68:16-18). The interviewer concluded the interview by saying she was going to escort Jesse out of the room so the interviewer could look for her supervisor to see if "we can't find you a job better equipped for your disability." (Ex. A at 68:18-21).

Landry testified that she met the supervisor when the interviewer returned to speak with Landry. (Ex. A at 69:25, 70:1-25). Landry described the supervisor as well. (Ex. A at 71:9-24). Landry testified that the supervisor was present when the interviewer told Landry that Walmart was going to find a for a job better equipped for Landry's disability and get back to her. (Ex. A at 68:16-21 and 71:12-15).

The Commission deposed two managers with a connection to the electronics department, Kathy Brogden and Dana Everett. Brogden had, in fact, worked as a sales associate in the electronics department before being promoted to manage the wireless department on July 4, 2015. (Exs. 17, 19, 25). Brogden denied receiving any training on how to conduct interviews. (Ex. B, Brogden Depo., at 20-22). And, in her deposition, Brogden described her first interview of an applicant as a department manager. (Ex. B at 62:1-25, 63:1-18). Brogden described being called over the intercom for the interview, being given a physical folder with the interview questions, and

7

that she never entered the data following her interview, that personnel did that for her.  (*Id.*)  She recalled her first interview of an applicant as being one for a cart pusher.  (Ex. B at 65:1-5). Brogden revealed that she had a learning disability and could only read at the third-grade level and was unable to read her own online assessment when she applied at Walmart.  (Ex. B at 65:9-25, 66:1-2, 80:16-25, 81:1-14).  (This is important given Defendant's claim that its computer based training shields it from liability.)  Brogden also indicated that Melissa Carrasco helped her with interviewing applicants (Ex. B at 64:10-19, 65:6-11) and Defendant's own exhibit shows Carrasco conducting an interview on July 14, 2015 (Dkt. 51-26, Pg. 87).  Brogden's timecard also shows her at Store 0400 on July 14, 2015 for the entire workday.  (Ex. 24).

Dana Everett testified that she had worked in both over-the-counter medication and in electronics.  (Ex. F, Everett Depo. 24:25, 25:1-4).  She recalled interviewing a female candidate with an arm amputation.  (Ex. F at 90:10-25, 91:1-14).    She also has a tattoo of a Precious Moments angel on her left leg.  (Ex. F at 54:1-23).  She also recalled this applicant talking about having worked in receiving and being interested in continuing to do so.  (Ex. F at 99:15-25). Everett also testified that department managers were routinely asked to interview applicants for other departments and specifically mentioned the Tire Lube Express ("TLE") department as one such example, an area for which Mr. Gulick says there were open requisitions on July 14, 2015. (Ex. F at 39:4-24; Dkt. 51-13, Pg. 10, ¶38).  Everett described receiving a physical folder from personnel prior to an interview.  (Ex. F at 45:8-25, 46:1-25, 47:1-9).  She indicated that the folder would contain the application and other forms the applicant had filled out online including the gap in employment form, the printout of what to bring for proof of citizenship, and the interview questions.  (Ex. F at 32:1-25, 33:1-25, 34:12-25, 35:1-25, 36:1).

Everett also indicated that she would not enter the data but would take it back to personnel for entry.  (Ex. F at 40:4-17).  Everett further testified that if she had questions during an interview, she would step out and ask another department manager or a superior.  (Ex. F at 49:4-25).  Greg Brown, the store manager for Store 0400, testified that an assistant store manager had the authority to approve an hourly manager hire and that a co-manager or the store manager did not need to sign off on the job offer.  (Ex. C, Greg Brown Depo., at 80:11-25).

Everett described the interview packet prepared by personnel in advance of an hourly manager conducting an interview.  (Ex. 6, Pages 32-35).  Everett describes it containing the applicant's job application, the applicant's work history, the list of acceptable documents from the I-9 form, the interview questions, the interview ratings, and that everything was placed into a manila folder.  (Ex. 6, Pgs. 16-27; Ex. F at 34:1-7).

Ms. Everett testified quite honestly about her own philosophy when it came to hiring persons with disabilities.  She stated:

> My philosophy always was – when I went in to do an interview was everybody needs to be productive, everybody needs a chance and everybody needs a job.
>
> And within that whole big company corporation of Wal-Mart, you can find something somebody can do, . . . Now, whether they have a job description for that, maybe not.

(Ex. F at 80:11-21).

Everett recalled discussing receiving work in the interview she had with the amputee.  (Ex. F at 99:20-22).  And she also admitted encouraging the applicant to seek a position other than in receiving.  (Ex. F at 100:17-25).  Everett also testified she did not spend much time reviewing Walmart's policies or procedures but knew they were available to her.  (Ex. F at 72:16-21).

Numerous witnesses, including Everett, conceded that even though Walmart employees were required to take CBL (computer-based module) courses, it did not necessarily matter how

long it took them to complete the course, there were no consequences for failing a course, you would not be terminated for failing the course, and you just had to keep taking the course until you passed it.  (Ex. F at 75:24-25, 76:1-7; Ex. C at 199:12-20; Ex. H at 39:10-25, 40:1; Ex. I, Vivian Depo., at 59:16-25, 60:1-7).

Similarly, Kathy Brogden's training transcript (Ex. 22) reflects that she did not receive timely training, at least as of July 14, 2015, on how to properly conduct interviews.  (Ex. 22). Brogden was not given training between the date of her promotion and July 14, 2015 on how to interview applicants nor does the transcript show any EEO courses specific to the Americans with Disabilities Act.  (Ex. 22).  And while both Kathy Brogden and Melissa Carrasco's training transcripts list EEO and FLSA and Labor courses, there is not a single module on their training transcripts listing the Americans with Disabilities Act or ADA in its title.  (Exs. 22 (Brogden Transcript) and 23 (Carrasco Transcript)).

Jesse Landry's application packet was printed for a department manager by personnel on July 13, 2015.  (Ex. 6, Pg. 20).   Brogden, a department manager, Cox, the personnel coordinator, Carrasco, a department manager, Everett, a department manager, Henderson, a department manager and training coordinator, Adrienne Young, an assistant store manager and Greg Brown, the store manager all testified that the department managers pick up a packet from personnel containing the applicant's application and interview questions prior to interviewing an applicant. (Ex. B at 62:5-25, 63:1-18, and 98:7-17; Ex. E at 50:5-25, 51:1-19; Ex. D at 18:13-15; Ex. F at 32:15-25; Ex. H at 32:4-17; Ex. J at 42:15-25, 43:1-8; and Ex. C at 133:6-25, 134:1-25.

Walmart's own Career Preference Guide ("CPG") policy 1201 (Hiring Overview), in effect in July 2015 (Ex. 14), calls for the Hourly Manager to ensure that the ***"application is complete,***

***initialed, dated, and signed by the applicant.***" (emphasis added). Landry's job application

contains her handwritten signature.   (Ex. 6, pgs. 16-17).

And, in its very first position statement to the EEOC, Walmart wrote:

Mr. Landry[3] submitted a general application to the Conroe, Texas Walmart #0400
("the Store) on July 8, 2015.  *See* Exhibit C, Mr. Landry's Application.  Based upon
his self-described qualifications, he was selected to interview for a Stocker position
on July 14, 2015.  Walmart also interviewed a number of other candidates for that
position and ultimately selected another candidate."

(Ex. 3, Walmart Initial Position Statement dated February 18, 2016). It was at this time that the

Walmart admitted Landry interviewed for a Stocker position.  Exs. 3, 15; *see also* FED. R. EVID.

801.

The EEOC  thereafter requested the applications for the stocker position, the name and job

title of the interviewer, the name and job title of the person who approved the hiring of applicants,

copies of any interview notes, whether Landry had any subsequent interviews, and a copy of the

job description for the stocker position.  (Exs. 4 & 5, Letters from EEOC Investigator Sharon

McElroy to Caleb Patterson dated May 25, 2016 and June 13, 2016).  On August 15, 2016,

Walmart then attempted to backtrack all the admissions made in the initial position statement and

professing ignorance of any interview of Landry.  (Ex. 6).  In that response, Walmart also asserted

that "During July 2015, there were approximately 30 different persons who might have had

authority to approve a hiring decision."  (Ex. 6, Pg. 6). But, tellingly, in this same response,

Walmart produced the contents of "[a] physical folder found at Store 0400 [which] contains Mr.

Landry's employment application, his availability worksheet, and his pre-screen answers." (Ex. 6,

Pg. 4).

---

[3] Walmart initially referred to Landry by the wrong gender.

11

Through the course of the charge investigation, the Commission continued seeking relevant information relating to the identity of Landry's interviewer.  (Exs. 7, 8, 10, 11, 12, and 13). Walmart gave the Commission a list of 27 female assistant store managers and department managers, from May through August 2015.  (Ex. 9, Pg. 13).  Neither Dana Everett nor Kathy Brogden's names appeared on that list; however, Ms. Everett's name was eventually disclosed. (Ex. 9, Pg. 13).

Walmart's own employee report shows that from mid-July 2015 through the end of August 2015, Walmart's managers hired approximately 50 new employees.  (Ex. 18).  A number of those employees were hired into positions which involved loading and unloading boxes (Ex. 18), the job duty described by Landry's interviewer. (Ex. A at 67:25, 68:1-9).  Testimonial evidence identified a variety of positions, including the Stocker, O/N 931 Stock/994FreshCL, Stock Associate/Cart Pusher, CAP Team Associate 1st, and CAP Team Associate 2nd, and O/N Fresh Sales Associate, as involving loading and unloading boxes.  (Ex. G, Gulick 30(b)(6) Depo. at 121:24-25, 122-131; Ex. B at 89-90; Ex. C at 96-102; Ex. H at 16:13-15, 118:10-15; Ex. I, Vivian Depo. at 55:22-25). In fact, when Jennifer Vivian, a former department manager was asked this question, she said if you were talking about loading and unloading boxes off of pallets, the positions involved would include "any department manager, any sales associate, anyone who worked on the floor anywhere, including I would even say cashiers sometimes had to load and unload boxes because they had the boxes of bags."  (Ex. I at 71:21-25, 72:1-2).

## V.    ARGUMENT & AUTHORITIES

Despite previously professing ignorance, Defendant now concedes that Landry has a disability and was qualified for the position(s) for which she was applying. In its initial position statement to the EEOC, Walmart admitted interviewing Landry for a stocker position but asserted

she was not the most qualified candidate.  Yet it now claims she could not have been interviewed because such an interview would have been contrary to its processes which does nothing to refute Landry's undisputed testimony that she was, in fact, interviewed and the interviewer referenced her disability in not considering her for the position. Moreover, Walmart produced to the EEOC the contents of a folder containing Landry's hand-signed job application, her pre-screen answers, an application addendum, her scheduling availability form printed on July 13, 2015, the acceptable documents portion of an I-9 form, Walmart's standard hourly manager questions, and the exceeds expectations rating the interviewing hourly manager gave Landry which establishes a material factual dispute regarding Landry's interview and rejection for the position at issue in this suit.  .

## A.  Standard of Review

Defendant is not entitled to summary judgment because the Commission has produced evidence that raises genuine issues of material fact regarding whether Defendant unlawfully refused to hire Landry on the basis of disability.  Rule 56(a) of the Federal Rules of Civil Procedure requires the party seeking summary judgment to prove "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A material fact is one which could affect the outcome of the lawsuit.  *Houston Police Officers Union v. City of Houston*, 330 F.3d 298, 301 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Summary judgment should not be granted if "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.

The substantive law will identify which facts are material.  *Anderson*, 477 U.S. at 248.  In considering Defendant's motion, the Court must draw all inferences from the underlying facts in favor of the non-moving party, here the EEOC.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962).  All doubt as to a material fact must also be resolved in favor of the EEOC.  *Fierros v. Texas Dept. of Health,* 274 F.3d 187, 190 (5th Cir. 2001); *Hayden v. First Nat'l Bank of Mt. Pleasant, Texas,* 595 F.2d 994, 996-97 (5th Cir. 1979).  The Court must review "all of the evidence in the record" and "must draw all reasonable inferences in favor of the nonmoving party . . .." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The court may not weigh conflicting evidence, assess the probative value of the evidence, resolve factual disputes or make credibility determinations. *Id.*  All that is required is that there be evidence present indicating the necessity of having the trier of fact to resolve the parties' differing versions of the truth at trial. *Anderson,* 477 U.S. at 249.  Based on the record in this case, summary judgment must be denied.

## B. Fact Issues Exist as to the Elements of the EEOC's Prima Facie Case Precluding Entry of Summary Judgment

Although the Defendant does not contest the first two elements of the EEOC prima facie case, it misstates the third element under which the EEOC's failure to hire claim should be analyzed. Under the ADA, the EEOC is required to establish that Landry: (1) has a disability or was regarded as disabled; (2) she was qualified for the job; and (3) she was subjected to an adverse employment action because of her disability.  *EEOC v. LHC Group, Inc.*, 773 F.3d 688 (5th Cir. 2014); *Nall v. BNSF Railway Co.*, 917 F.3d 335, 341 (5th Cir. 2019); *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016). Defendant has conceded the first two elements of this prima facie case disability discrimination. (Dkt. No. 52, Pg. 11, fn. 6).  But, as to the third element, and contrary to Defendant's representations, the Fifth Circuit has held that in order to establish the causation element for a failure to hire claim, the applicant need only show that the applicant's disability played a role in the employer's decision-making process and had a determinative influence on the outcome.  *Pinkerton v. Spellings,* 529 F.3d 513, 519 (5th Cir. 2008).  Plaintiffs may prove discrimination through direct evidence, circumstantial evidence, or both.  *See Vance v.*

*Union Planters Corp.*, 209 F.3d 438, 444 (5th Cir. 2002).  Direct evidence "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  Here, the undisputed evidence is that after twice questioning Landry's ability to perform the job's duties with her disability, the Walmart interviewer told Landry that she and her manager would look for a different position for Landry, one better equipped for Landry's disability.   (Ex. A at 68:16-21 and 71:12-25).  The failure to hire—or even to refuse to call an employee back to work—can be an adverse employment action. *Presta v. Omni Hotel Mgmt. Corp.*, No. 4:17-cv-912, 2018 U.S. Dist. LEXIS 60998, *28-29, 33 Am. Disabilities Cas. (BNA) 1682 (S.D. Tex. Apr. 4, 2018) (". . . a reasonable factfinder could determine that Defendant's actions constituted an impermissible failure to hire, which also is an 'ultimate employment decision.'"); *see also O'Quinn v. Hallmark Toyota-BMW, Inc.*, No. 3:06cv00192-DPJ-JCS, 2008 U.S. Dist. LEXIS 132085 *10, 2008 WL 11380130 (S.D. Miss. Feb. 7, 2008) ("To establish a prima facie case of discriminatory failure to hire under each of these theories, Plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position he was denied; (3) he was not hired; and (4) after his rejection, the position remained open or the employer filled the position with someone outside the protected group.").

Walmart's own document shows that it hired associates for Store 0400 from May 1, 2015 through August 31, 2015 and that at least 13 were for positions involving some sort of stocking duties (*i.e.,* Stock Associate/Cart Pusher, CAP Team Associate 2nd, O/N 931 Stock/994 Fresh CL, CAP Team Associate 1st).  (Ex. 18).

### C. Landry Has a Disability and Was a Qualified Individual with a Disability under the ADA.

The EEOC has established a prima facie case that Landry was a qualified individual with a disability under the ADA because she is a congenital amputee who was born missing part of her

right forearm and hand, and because Defendant regarded her as having an impairment because of her missing right forearm and hand. 42 U.S.C. §§ 12102(1)(A) & (C) and 12111(8). Section 12102(A) of the ADA covers individuals who have "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* In addition, the language of 29 C.F.R. § 1630.2(h) further defines a physical or mental impairment as "any physiological disorder or condition, cosmetic disfigurement, ***or anatomical loss affecting one or more body systems . . ..***" *Id.* (emphasis added). Section 1630.2(j)(3)(iii) notes, "it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the life activities indicated . . . partially or completely missing limbs. . . substantially limits musculoskeletal function." *Id.* Defendant has now conceded that Landry has a disability, was perceived as having a disability, and that she was qualified for the position for which she applied. (Dkt. 52, Page 11, fn. 6). Thus, these two elements of the EEOC's prima facie case are taken as established for summary judgment purposes.

### 1. Defendant's Decision Not to Hire Landry Was Motivated by Landry's Disability

In its very first position statement to the EEOC, Walmart admitted to the Commission that based on Landry's qualifications, she was selected for an interview for the stocker position and that Walmart ultimately selected another candidate. (Ex. 6). This was an admission that the position Landry interviewed for was a stocker position. FED. R. EVID. 801. And it was during this interview the manager asked Landry about her disability and told her that Walmart would find a more suitable position for her. (Ex. A at 68:18-21).

Landry testified that at her job interview with Walmart on July 14, 2015, the interviewer specifically questioned her about her disability twice and her ability to load and unload boxes. (Ex. A at 67-69). Landry also testified that her interviewer did not discuss the actual job

description with her beyond saying it involved loading or unloading boxes.  (Ex. A at 75:25, 76:1-2).  Landry also testified the interviewer then indicated that she was going to escort her [Landry] out of the room so the interviewer could look for her supervisor to see if "we can't find you a job better equipped for your disability."  (Ex. A at 68:18-21).  This testimony raises a genuine issue of material fact that Landry's disability was a motivating factor in Walmart's decision not to hire Landry for the position for which she was interviewing.

Walmart's claim that its policy was to only ask if an applicant could perform a job with or without reasonable accommodations *at the time a job offer is made* somehow forecloses the conclusion that Landry's disability was a motivating factor in the decision not to hire her.  (Ex. 14, CPG 1201) (emphasis added).  It does not. First, no conditional job offer was ever made to Landry.  Therefore, the interviewer's statements to Landry could not, under any circumstances, be considered a post-offer medical inquiry under the ADA.    42 U.S.C. § 12112(d)(3).  Defendant's contention that such an inquiry is merely a technical violation is misplaced, as is their reliance on *Armstrong v. Turner Indus., Inc.* 141 F.3d 554, 561-562 (5th Cir. 1998).  The *Armstrong* case involved a violation of Section 12112(d) of the ADA – which is not at issue here – and which does not grant a private cause of action.  *See EEOC v. Boh Bros. Constr. Co., LLC*, No. 09-6460, 2011 U.S. Dist. LEXIS 91011 *5 (E.D. La. Aug. 16, 2011) ("*Armstrong* is distinguishable from the case at bar as that case involved a private plaintiff seeking relief only for himself, whereas here, and as noted in jurisprudence, the suit was filed by the EEOC who 'may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief..'") (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295-96 (2002)).  And, in the *Periman* case, the plaintiff had not suffered an injury in fact because "***she was***

*subsequently hired by the City"* unlike in the case at bar**.** (Dkt. 52, Pg. 23) (emphasis added) (citing *Periman v. City of Taft*, No. C-11-77, 2011 U.S. Dist. LEXIS 55920 *2-3 (May 25, 2011)).

Walmart describes the department manager's actions in Landry's interview as a permissible pre-employment inquiry made of an applicant with an obvious disability. (Dkt. 52, Pg. 14). It was not. The undisputed evidence is that the interviewer asked Landry if she could do the job with *her disability* twice and then later told her that she and her manager would look for a position *better equipped for Landry's disability*. (emphasis added). (Ex. A at 68:1-21). None of these statements are the equivalent of asking an applicant if they can perform a job with or without a reasonable accommodation.

A reasonable jury could conclude from this evidence that Walmart lacks credibility and that it refused to hire Landry because of animus towards individuals with a disability. Accordingly, summary judgment for Walmart must be denied.

### 2. Defendant Regarded Landry as Disabled and Was Motivated by That Perception

Under section 12102(a)(3) of the ADA, "an individual meets the requirements of "being regarded as having such an impairment if the individual establishes that he or she has been subject to [an adverse employment action] because of actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). Plaintiff does not need to show that the employer believed the employee's impairment limited one or more major life activities. *Williams v. Tarrant Cty Coll. Dist.*, 717 F. App'x 440 (5th Cir. 2018) (finding genuine issue of material fact as to whether plaintiff was "regarded as" having a disability from email exchanges and other documents suggesting the employer knew she had impairments and terminated her because of them). Congress included the 'regarded as' definition to disability to "acknowledge that society's accumulated myths and fears about

18

disability and diseases are as handicapping as are the physical limitations that flow from an actual impairment." *School Board of Nassau Cnty v. Arline*, 480 U.S. 273, 283 (1987); *EEOC v. Texas Bus Lines*, 923 F.Supp. 965, 975 (S.D. Tex. 1996); 29 C.F.R. Pt. 1630, App. (2020) (reaffirming the principle of *Arline* even after the passage of the ADA Amendments Act).

Despite Walmart's claim that its policies prohibited hiring managers from discussing an applicant's disability pre-offer, the summary judgement evidence is that the managers relevant to Landry's interview either did not read or could not read the training materials provided. (Exs. B at 65:9-25, 66:1-2; F at 72:16-21). Moreover, the evidence establishes that despite Landry explaining she knew she could perform the duties described to her for the position, she was informed that Walmart management would look for a position that would be better equipped for her disability. (Ex. A at 68:16-21). This evidence is sufficient to raise a fact issue that Walmart refused to hire Landry because it regarded her as having a disability. By Walmart's own admission, Landry was never interviewed for any of 36 subsequent requisition positions despite being told they would find a position for her. Walmart's own document shows it hired 46 individuals, 13 of which involved stocking duties. (Ex. 18).

### 3. Evidence Exists that Landry was qualified to perform the duties of a Stocker or other position involving loading and unloading boxes.

Walmart has conceded that Landry was qualified for all the positions "for which she applied." (Dkt. 52, Page 17, fn. 6). The undisputed evidence is that Walmart interviewed her for a position for which she applied, although it has given various descriptions of the name of that job. First, as discussed above, in February 2016, Walmart stated Landry applied and was interviewed for a stocker job. Second, jobs "loading or unloading boxes," encompasses several other jobs for applicable to Landry's interview. As a department manager working at the Walmart location during the relevant time period noted, jobs involving loading and unloading boxes included sales

associates, cashiers, and any job working anywhere on the floor. (Ex. I, 71:21-25 – 72:1-2) These are jobs listed on Landry's application.  (Ex. 6, Pgs. 16-17). Jobs involving loading and unloading were positions for which Walmart frequently interviewed. (Ex. H at 117-118).   Walmart's witnesses identified a variety of positions, including the Stocker, O/N 931 Stock/994FreshCL, Stock Associate/Cart Pusher, CAP Team Associate 1st, and CAP Team Associate 2nd, and O/N Fresh Sales Associate, as involving loading and unloading boxes.  (Ex. G at 121:24-25, 122-131; Ex. B at 89-90; Ex. C at 96-102; Ex. H at 16:13-15, 118:10-15; Ex. I at 55:22-25).  These would have been encompassed within the jobs identified in Landry's application.

But it really does not matter what boxes were checked on Landry's application but rather what the hiring manager told Landry during her interview.  It is the hiring manager who said Landry was going to be loading and unloading boxes.  (Exs. 1, 2, and A at 67-68).  It was the hiring manager who questioned Landry's ability to complete these duties with her disability.  (Exs. 1, 2, and A at 68). And it was the hiring manager who stated they needed to find a position better equipped for Landry's disability. A jury could conclude that the hiring manager would not consider Landry the position at Walmart because of her disability or because it regarded her as disabled.  In a similar case involving a congenital amputee, a jury reached just such a conclusion.  *EEOC v. Wal-Mart Stores, Inc.*, 11 F.Supp.2d 1313, 1321 (D. N.M. 1998) ("The jury reasonably may have believed that Wal-Mart's explanation was a mere pretext and that the only other explanation, based upon the documents and testimony presented at trial, was that Wal-Mart intentionally discriminated against Mr. Otero because of his amputated arm.").

### D.  Walmart's Failure to Hire Landry was an Adverse Employment Action

Walmart makes the absurd argument that a discriminatory failure to hire is not an adverse action. This is the third prong of the prima facie case.  *EEOC v. LHC Group, Inc.*, 773 F.3d 688

(5th Cir. 2014); *Nall v. BNSF Railway Co.*, 917 F.3d 335, 341 (5th Cir. 2019); *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016).  Walmart's reliance on *McKay v. Johanns*, 265 F. App'x 267, 268-69 (5th Cir. 2008) in support of this claim is misplaced and misstates both the facts and the law.  Following the Supreme Court's ruling in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) holding that an adverse employment action is broader than an ultimate employment action, courts within the Fifth Circuit noted that the Circuit had improperly limited adverse employment actions to ultimate employment decision.  As the Court in   *McKay*, noted, "[i]t is not entirely clear that this Circuit's formulations of the ultimate employment decision standard comports with the Supreme Court's characterization of the Title VII standard in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2411-12, 165 L.Ed.2d 345 (2006)."  265 F. App'x 268-69; *see also Peyton v. City of Yazoo City*, 764 F.Supp.2d 831, 840 (S.D. Miss. 2011) ("Until recently, the Fifth Circuit had held that the standard for adverse employment action was the same for both direct discrimination and retaliation claims under Title VII.  As discussed in Part A above, that standard required a plaintiff alleging discrimination to show an 'ultimate employment decision' such as ***hiring*** . . .") (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)) (emphasis added).  As the *McKay* court concluded, whether called an adverse employment action or an ultimate employment action, the decision to refuse to hire an applicant because of a disability is illegal discrimination.

More recently, a district court concluded the failure to hire—or even to refuse to call a plaintiff back to work—can be an adverse employment action.  *Presta v. Omni Hotel Mgmt. Corp.*, No. 4:17-cv-912, 2018 U.S. Dist. LEXIS 60998, *28-29, 33 Am. Disabilities Cas. (BNA) 1682 (S.D. Tex. Apr. 4, 2018).  In *Presta*, the employer continued hiring laundry attendants despite not recalling the plaintiff back to her prior duties.  The evidence included a job advertisement and

evidence that "[b]etween July 2015 and February 2017, the Hotel hired at least five individuals that spent time working in the Hotel's laundry department." *Id.* at *8-9.  Where an employer has multiple positions open, and an applicant applies and is interviewed for a vacant position (but is not necessarily told the job title for which she applied), the plaintiff need merely show that she applied for vacancies; was interviewed for employment; was not considered further after the interviewer saw her disability; and other applicants were hired for the same position, one cannot say that the applicant has not met her prima facie burden when she presents these facts. *Presta v. Omni Hotel Mgmt. Corp.*, No. 4:17-cv-912, 2018 U.S. Dist. LEXIS 60998, *28-29, 33 Am. Disabilities Cas. (BNA) 1682 (S.D. Tex. Apr. 4, 2018).

It is difficult to escape the fact that Walmart admitted to interviewing Landry for a stocker position and produced Landry's interview packet containing all of the documents required for interview packets as described by multiple Walmart managers.  (Ex. B at 62:5-25, 63:1-18, and 98:7-17; Ex. E at 50:5-25, 51:1-19; Ex. D at 18:13-15; Ex. F. at 32:15-25; Ex. H at 32:4-17; Ex. J at 42:15-25, 43:1-8; Ex. C. at 133:6-25, 134:1-25).  That packet which matches, item for item, the description provided by Everett.  (Ex. F at 33-34).  Landry was interviewed, given excellent ratings, questioned about her disability, and then she was told they would look for a more suitable position given her disability.  Then Walmart did nothing despite 36 subsequent requisitions identifying her as a candidate for interview. Thus, a genuine issue of material fact exists that Landry was subjected to an adverse employment action.

**E.  Walmart's proffered reasons for not hiring Landry are pretextual**

Walmart's shifting explanations for all of its actions, in addition to not hiring Landry, are pretextual. Walmart admitted that it interviewed Landry and produced her interview packet and then denied it interviewed her.  (Exs. 3 and 6).  And although it admits she submitted an online

application, it now wants to claim that the application containing her handwritten signature could not have been made during an interview because of its processes despite the interview notes and the excellent rating on her responses to the interview questions.  (Ex. 6).

The undisputed and most compelling evidence that Walmart's conduct was pretextual,  is that during her interview Walmart asked Landry about her disability twice, expressed doubt that her disability would permit her to perform the described job duties and concluded the interview by telling Landry that it would look for a job that would be better equipped for her disability.  She asked Landry directly, "do you think you can do that with your disability?"  (Ex. A at 68:3-4). When Landry answered that she could, pointing out that she similar duties of picked up boxes of books at her job with Barnes & Noble – (Ex.  A at 68:5-6) – the interviewer then responded, "[w]ell if you **think** you can do it, then more power to you."  (Ex. A. at 68:7-8).  The interviewer again asked if she was sure Landry could do the job with her disability.  (Ex. A at 68:12-14).  The interviewer concluded the interview by saying she was going to escort Landry out of the room so she [the interviewer] could look for her supervisor to see **if "we can't find you a job better equipped for your disability."**  (Ex. A at 68:16-21).  Not only are these statements direct evidence, the latter statement is undisputed evidence of pretext. Defendant has not offered a scintilla of evidence regarding what was said during the interview between Landry and the interviewer. Thus, disputed issues of material fact exist on this element of the EEOC's prima facie case.

Walmart has proffered shifting explanations for its conduct.  The Supreme Court has made it abundantly clear that courts and juries are free to consider such shifting explanations and infer that Walmart is prevaricating.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) ("Such an inference is consistent with the general principle of evidence law that the factfinder is

entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'").

Defendant initially said Landry was interviewed but not selected due to its selection of a more qualified candidate. (Ex. 3).  Next, it claimed Landry had a non-interview "meeting" that was something less than an interview.  (However, reasonable minds understand that anyone who completes a job application and is then contacted to come to the employer's job site to discuss their job application has had a job interview.)  Walmart's claims concerning the short time span between completion of Landry's application and when she was contacted to schedule an interview is disputed by the EEOC's evidence that Landry had completed an application on May 8, 2015, which became inactive only because Landry lacked the Retail Pre-Employment Assessment ("RPEA").  However, Landry subsequently completed the Assessment, meaning Landry's May 8, 2015 application became active with her passage of the RPEA. [4]

### F.  Walmart's managers' actions and inaction(s) are sufficient to support an award of punitive damages

Punitive damages may be recovered if the EEOC demonstrates that the Defendant engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of Landry. 42 U.S.C. § 1981a(b). The EEOC has presented sufficient evidence to present fact issues regarding Landry's entitlement to punitive damage arising from Walmart's malicious or reckless disregard of the ADA rights.

Walmart asked Landry about her disability twice, expressed doubt that her disability would permit her to perform the described job duties and concluded the interview by telling Landry that it would look for a job that would be better equipped for her disability.  (Ex. A at 68:3-4, 68:7-8, 68:12-14, and 68:16-21).  Defendant has not presented the court with a scintilla of evidence disputing the content of this discussion.  These statements evince a willful and wanton disregard

---

[4]  Notably, Mr. Gulick's declaration (Dkt. 51-13) makes no mention of Landry's May 8, 2015 application.

of Landry's right to be free from discriminatory hiring decisions and stereotypical assumptions about what she could or could not accomplish with her disability.

Walmart claims it made a "good-faith" effort to comply with the ADA as evidenced by its policies and training. Even if this were the standard, Walmart ignores the actual evidence that at least one manager could not read the policy (Ex. B at 65:9-25) and another chose not to (Ex. F at 72:16-21) and the manager who could only read at a third-grade level had no training until *after* Landry's interview. (Ex. 22). Moreover, there was a lack of any computer-based learning modules specific to the Americans with Disabilities Act for two managers. (Exs. 22 and 23).

Walmart has tried and lost similar arguments in the past, even in one case involving a traumatic amputee applicant. *EEOC v. Wal-Mart Stores, Inc.*, No. 98-2122, 1999 U.S. App. LEXIS 33144 *13-14 (10th Cir. Dec. 21, 1999); *see also EEOC v. Wal-Mart Stores, Inc.*, 11 F.Supp.2d 1313, 1318-20 (D.N.M. 1998); *EEOC v. Wal-Mart Stores Inc.*, 156 F.3d 989, 992 (9th Cir. 1998) (assistant manager's discriminatory behavior binds employer for purposes of punitive damages); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 306 (4th Cir. 1998) (store manager's discriminatory behavior binds employer for purposes of punitive damages). This evidence and testimony are sufficient to raise material fact issues regarding awarding punitive damages in this case.

## VI.    CONCLUSION

For the reasons stated above, summary judgment must be denied. The EEOC has raised genuine issues of disputed fact on all material facts.