United States District Court
Southern District of Texas

**ENTERED**

November 05, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EQUAL EMPLOYMENT OPPORTUNITY      §
COMMISSION,                        §
                                   §
              Plaintiff,           §
                                   §
v.                                 §      CIVIL ACTION NO. H-18-3407
                                   §
WAL-MART STORES, TEXAS, L.L.C.,    §
                                   §
              Defendant.           §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), brings this action on behalf of Jesse Landry ("Landry") against defendant, Wal-Mart Stores, Texas, L.L.C. ("Wal-Mart"), for discriminatory failure to hire in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"). Pending before the court are Defendant's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 51), Defendant's Motion in Limine and Brief in Support (Docket Entry No. 54), and the EEOC's Motion in Limine (Docket Entry No. 56). For the reasons set forth below, the pending motions will all be denied.[1]

---

[1] Asserting that "this Court's procedures require any brief or memorandum to be limited to 25 pages without leave of court, [and that n]othing in the record here suggests that Walmart sought leave of court to file in excess of 40 pages as its motion and brief," the EEOC asks the court to strike the Defendant's MSJ. Plaintiff Equal Employment Opportunity Commission's Memorandum in Opposition to Wal-Mart's Motion for Summary Judgment ("EEOC's Opposition to Defendant's MSJ"), Docket Entry No. 53, p. 10.  Because the EEOC
(continued...)

## I.  <u>Undisputed Facts</u>[2]

Landry is a congenital amputee who is missing her right forearm and hand.  In July of 2015 Landry was student at Sam Houston State University.  Landry's employment history included working in the Sam Houston college bookstore where she earned $7.25 an hour, and her duties included cashiering and stocking books.[3]

On July 8, 2015, Landry completed an electronic application for employment at Wal-Mart Store #0400 in Conroe, Texas, and on July 13, 2015, Landry completed Wal-Mart's preemployment assessment for her application.[4]

---

[1](...continued)
has neither argued nor showed that Wal-Mart's filing of excess pages has prejudiced it in any way, the EEOC's request to strike will be denied.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]<u>See</u> Statement of Claims, Complaint, Docket Entry No. 1, pp. 3-5 ¶¶ 12-21; Statement of Material Facts, Defendant's MSJ, Docket Entry No. 51, pp. 6-21; and Plaintiff's Material Facts Supporting the Denial of Summary Judgment, EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, pp. 12-20.

[3]Oral Deposition of Jesse Nicole Landry ("Landry Deposition"), pp. 22:24-23:5, 25:13-15, and 46:8-9 Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, pp. 8-9, 14.

[4]<u>See</u> Wal-Mart Position Statement dated February 18, 2015, with attachments, Exhibit 3 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12, pp. 7 and 23-24; Wal-Mart Position Statement dated August 15, 2015, with attachments, Exhibit 6 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12, pp. 36 and 48-49.  <u>See also</u> Career Preference Data for M[s]. Landry's two applications with Walmart, Exhibit A to Wal-Mart Position Statement dated August 15, 2015, with attachments, Exhibit 6 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12,
(continued...)

On July 14, 2015, Landry met with a department manager at Wal-Mart Store #0400 to interview for a position.[5] Although Wal-Mart's electronic records do not evidence her interview, a physical folder containing "interview notes" found at Wal-Mart Store #0400,[6] contains Landry's hand-signed employment application,[7] Landry's pre-screen answers,[8] an application addendum in Landry's name,[9] a scheduling availability form for Landry printed on July 13, 2015,[10] and forms containing questions for managers to ask during interviews with ratings all circled "exceeds expectations."[11]

---

[4](...continued)
p. 40 (showing that Landry completed two electronic applications for employment on May 8, 2015, and July 8, 2015, but only completed the preemployment assessment test for the July 8, 2015, application); Wal-Mart's Responses to EEOC's Second Set of Requests for Admission dated October 5, 2020, Nos. 1, 3, and 5, Exhibit 21 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-13, p. 37 (admitting that Landry completed the employment application and preemployment assessment for her July 8, 2015, application).

[5]Defendant's MSJ, Docket Entry No. 51, p. 16 n. 2 (stating that "Wal-Mart does not dispute that Landry met with an hourly supervisor"). See also Defendant's Brief in Support of MSJ, Docket Entry No. 52, p. 8 ("Walmart does not dispute that Landry met with an individual at Walmart"), and id. n. 2 (describing the individual with whom Landry met as an "Hourly Department Manager").

[6]Wal-Mart Position Statement dated August 15, 2015, with attachments, Exhibit 6 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12, p. 38 ¶ 4 (citing Exhibit C thereto, Docket Entry No. 53-12, pp. 47-59).

[7]Id. at 48-49.

[8]Id. at 50.

[9]Id. at 51.

[10]Id. at 52.

[11]Id. at 54-59.

On October 15, 2015, Landry filed a charge of discrimination with the EEOC asserting that

> [o]n July 14, 2015, I was interviewed at the Wal-Mart Store on Loop 336 West, Conroe, Texas.  I had applied with Wal-Mart and this was a scheduled interview.  The woman conducting the interview immediately stated that I would not be able to do the job because of my "disability."  I asked what the job was and she stated that it was unloading and moving boxes.  I informed her that I was capable of doing this job because I was performing those same tasks at my current job.  She again stated that she did not think I could do the job because of my "disability."  She stated that she would speak to her supervisors and let me know when something became available that my "disability" would allow me to do.[12]

Asserting that she was "very upset and discouraged,"[13] and that she "was never given the opportunity to demonstrate that [she] could perform the job,"[14] Landry stated that she believed she had "been discriminated against by being regarded as disabled, in violation of the American with Disabilities Act (ADA)."[15]

In its first position statement to the EEOC dated February 18, 2016, Wal-Mart acknowledged that Landry was interviewed for a stocker position on July 14, 2015, by stating that

> Mr. Landry submitted a general application to the Conroe, Texas Walmart #0400 ("the Store["]) on July 8, 2015.  See Exhibit C, Mr. Landry's Application.  Based upon his self-described qualifications, he was selected to

---

[12]Jesse Landry Charge of Discrimination, Exhibit 2 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12, p. 4.

[13]Id.

[14]Id.

[15]Id.

-4-

> interview for a Stocker position on July 14, 2015.
> Walmart also interviewed a number of other candidates for
> that position and ultimately selected another
> candidate.[16]

Wal-Mart also stated that

> [t]he applicable evidence reveals that Mr. Landry was not
> hired because he was not the best qualified individual
> for the position.  The Company, therefore, respectfully
> requests that the Charge be dismissed in its entirety
> with a "no probable cause" determination.[17]

In a second supplemental position statement to the EEOC dated

August 15, 2016, Wal-Mart contended that Landry could not have been

interviewed on July 14, 2015, because such an interview would have

been contrary to its hiring processes by stating that

> the data kept in the ordinary course of business by
> Walmart's Career Preferences system does not link
> Mr. Landry's application to any particular position or to
> an interview on July 14, 2015, or any other date. Given
> that there was no open requisition for a Stocker position
> at Store 0400 in July 2015, and given that Mr. Landry did
> not indicate an interest in a Stocker position on his
> application[,] Walmart has no reason to believe that
> Mr. Landry was interviewed for a Stocker position on July
> 14, 2015, as he alleges in his Charge.[18]

In a third supplemental position statement to the EEOC from

January 19, 2017,[19] Wal-Mart wrote that

---

[16]Wal-Mart Position Statement dated February 18, 2016, with
attachments, Exhibit 3 to EEOC's Opposition to Defendant's MSJ,
Docket Entry No. 53-12, p. 7.  Wal-Mart's initial position
statement mistakenly referred to Landry as a male.

[17]Id.

[18]Wal-Mart Position Statement dated August 15, 2016, with
attachments, Exhibit 6 to EEOC's Opposition to Defendant's MSJ,
Docket Entry No. 53-12, p. 36.

[19]Wal-Mart Position Statement dated January 19, 201[7], Exhibit
(continued...)

-5-

Ms. Landry alleges that she interviewed for a position on July 14, 2015, at Store #400.  She further claims that during this alleged interview, the interviewer "immediately stated that I would not be able to do the job because of my disability."  Walmart filed its Statement of Position on February 19, 2016, which generally denied the allegation that such preposterous remarks could have occurred at any interview, in view of Walmart's general principles and policies.  Walmart continues to respectfully assert that the statements alleged to have been made by an unnamed interviewer are non-credible on their face.

In its August 15, 2016, responses to the EEOC's First Supplemental Request for Information, Walmart indicated it had determined that its Career Preference hiring records for Ms. Landry are devoid of any indication (which generally would be present) that her May and July 2015 applications to Walmart resulted in her inclusion in a specific job requisition or that she interviewed for a particular position with the Company. Rather, as detailed in its August 15, 2016[,] response, Walmart's Career Preference records for Ms. Landry note only that she submitted employment applications on May 8 and July 8, 2015.  Moreover, although Store #400 located a file folder containing Ms. Landry's employment application, availability worksheet and pre-screen answers, neither the folder nor the documents inside contain any information regarding an interview being scheduled, a position for which an interview may have occurred, or the name of the person conducting the interview.

. . . Walmart continues to . . . request dismissal of the Charge with a "no probable cause" finding.[20]

---

[19](...continued)
9 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12, pp. 70-82.  The document is dated January 19, 2016, but could not have been written on that date because it references both the February 19, 2016, and August 15, 2016, position statements.

[20]Id. at 70-71.

On May 14, 2018, the EEOC issued a Determination on Landry's charge finding that "there is reasonable cause to believe that Charging Party was denied employment in violation of the ADA."[21]

On September 24, 2018, the EEOC filed this action.[22]

## II.   Defendant's Motion for Summary Judgment

The EEOC alleges that Wal-Mart discriminated against Landry on the basis of disability in violation of the ADA by

> refusing to hire her for a stocker job for which she was well-qualified.   Although her medical condition (congenital amputee) did not affect her from doing her job, the Walmart managers responsible for screening and interviewing applicants refused to refer her on for employment because of her disability and/or Defendant regarded Jesse Landry as having a disability by refusing to hire her because of an actual or perceived impairment.[23]

The EEOC also alleges that Wal-Mart's unlawful employment practices "were intentional"[24] and "were done with malice or with reckless indifference to the federally protected rights of Jesse Landry."[25]

Wal-Mart argues that it is entitled to summary judgment because the EEOC has failed to establish disability discrimination

---

[21]EEOC Letter of Determination dated May 14, 2018, Exhibit 13 to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-12, p. 94.

[22]Complaint, Docket Entry No. 1.

[23]Id. at 1.  See also id. at 4-5 ¶¶ 14-19.

[24]Id. at 5 ¶ 20.

[25]Id. ¶ 21.

-7-

by direct or circumstantial evidence; because the legitimate, non-discriminatory reason Landry was not hired is not pretextual and Landry's alleged disability was not a motivating factor in Wal-Mart's failure to hire her; and because there is no evidentiary basis to support an award of punitive damages.[26]

Plaintiff responds that genuine issues of material fact raised by both direct and circumstantial evidence preclude granting Defendant's MSJ, that Walmart's shifting positions regarding its treatment of Landry raise credibility issues, and that the actions and inactions of Wal-Mart's managers support an award of punitive damages.[27]

## A.    Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment.  Fed. R. Civ. P. 56.  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  The

---

[26]Brief in Support of Defendant's Motion for Summary Judgment ("Defendant's Brief in Support of MSJ"), Docket Entry No. 52.  See also Defendant's Reply to Plaintiff's Memorandum in Opposition to Wal-Mart's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 55.

[27]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, pp. 9-12 (summarizing the EEOC's arguments).

Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553–2554). If the moving party meets this burden, the nonmovant must go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or other admissible evidence that facts exist over which there is a genuine issue for trial. Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

**B.   Applicable Law**

Title I of the ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring . . . of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To be considered disabled under the ADA an individual must have "(A) a physical or mental impairment that substantially limits one or more life activities . . .; (B) a record of such an impairment; or (C) [be] regarded as having such an impairment."   42 U.S.C. § 12102(1)(A–C).   "[M]ajor life activities include, but are not limited to . . . lifting . . . and working."  42 U.S.C. § 12102(2)(A).

**C.   Application of the Law to the Parties' Arguments and Evidence**

Asserting that for purposes of the pending MSJ it does not dispute that Landry was disabled and/or perceived as disabled, or that Landry met with an hourly, department manager,[28] Wal-Mart argues that it is entitled to summary judgment on the EEOC's

---

[28]Defendant's MSJ, Docket Entry No. 51, p. 16 n. 2, and Defendant's Brief in Support of MSJ, Docket Entry No. 52, p. 8.

discriminatory failure-to-hire claim because "the alleged interview was not related to any position for which Landry had applied, and therefore, did not have the effect of causing Landry to suffer an adverse employment action,"[29] and because "there is no competent evidence that Landry was treated less favorably in the hiring process [than] non-disabled applicants."[30]

Plaintiff responds that the department manager's statements to Landry provide direct evidence of discrimination, and that even under the indirect method of proof used for circumstantial evidence cases, Plaintiff has presented enough evidence to raise genuine issues of material fact for trial.[31]  Plaintiff may establish an ADA claim by using either direct or circumstantial evidence.   See E.E.O.C. v. LHC Group, Inc., 773 F. 3d 688, 694 (5th Cir. 2014).

1.   The EEOC Has Cited Direct Evidence that Raises Genuine Issues of Material Fact for Trial

As direct evidence of discrimination the EEOC cites Landry's testimony that the woman who interviewed her "twice asked if she thought that she could do the job with her disability and then was told [by] the interviewer [that she] and her manager would try to

---

[29]Defendant's Brief in Support of MSJ, Docket Entry No. 52, pp. 8-9.

[30]Id. at 9.

[31]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, pp. 10-12.

-11-

find Landry a position that was 'better equipped' for her disability."[32]   Landry testified that on July 11th or 12th, 2015, someone at Wal-Mart called her cell phone and left a voice message inviting her to call to schedule a job interview.[33]   When Landry returned the call she was given a choice of coming to the store for a job interview on July 13th or 14th, and that she chose July 14th. The person scheduling the job interview instructed Landry to go to the back of the store and let someone know that she was there for a job interview, which Landry did.[34]   Although neither party has been able to identify the person who scheduled Landry's interview,[35] multiple Wal-Mart employees have testified that interviewees were regularly instructed to go to the back of the store and let someone know that they were there for a job interview.[36]

---

[32]Id. at 11.   See also id. at 23 ("[T]he undisputed evidence is that after twice questioning Landry's ability to perform the job's duties with her disability, the Walmart interviewer told Landry that she and her manager would look for a different position for Landry, one better equipped for Landry's disability."); and Landry Deposition, pp. 68:16-72:24, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, pp. 19-20.

[33]Landry Deposition, pp. 34:14-25, 60:2-61:23, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, pp. 11, 17-18.

[34]Id. at 60:9-63:13, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, pp. 17-18.

[35]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, p. 13.

[36]Id. at 14 (citing Videoconferenced Deposition of Christina Kimberly ("Cox Deposition"), p. 30:7-11, Exhibit E to EEOC's
(continued...)

Landry testified that on July 14th, 2015, she followed the instructions she had received by going to the back of the store and letting an employee know that she was there for a job interview.[37] A woman came to get Landry, and took her down a hallway through big black doors and into a small office.  After telling Landry that she had just been promoted to manager of the electronics department and that she was excited to be conducting her first interview, the woman asked Landry a number of questions.[38]  Landry testified that the woman asked her is she were willing to work overnight, and that Landry answered, "Yes."[39]  Landry testified that the woman described the job for which she was being interviewed as involving "picking up boxes and putting them on . . . little carts."[40]   Landry testified that the woman asked her directly, "do you think you can

---

[36](...continued)
Opposition to Defendant's MSJ, Docket Entry No. 53-5, p. 9.; Videoconferenced Deposition of Dana Marlene Everett ("Everett Deposition"), p. 34:1-7, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, p. 10; Oral Deposition of Debra Jean Thomassie Henderson ("Henderson Deposition"), p. 144:11-24, Exhibit H to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-8, p. 37).

[37]Landry Deposition, pp. 64:2-9, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 18.

[38]Id. at 64:20-65:15, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, pp. 18-19.

[39]Id. at 76:3-5, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 21.

[40]Id. at 67:25-68:3, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

-13-

do that with your disability?"[41]   Landry responded that she could because her bookstore job required her to lift boxes of books.[42] Landry testified that the interviewer responded, "[w]ell if you think you can do it, then more power to you."[43]   Landry testified that the woman again asked her if she was sure that she could do the job with her disability.[44]   Landry testified that the woman concluded the interview by stating that she was going to escort Landry out of the room so that she could look for her supervisor to see if "we can't find you a job better equipped for your disability."[45]   Landry testified that the woman returned with her supervisor, and in the supervisor's presence told her that Wal-Mart would get back with her when a job better equipped for her disability was found.[46]

Although neither party has been able to identify the manager of the electronics department who interviewed Landry, Landry described her as a woman, possibly 5'2" to 5'4" in height, with

---

[41]Id. at 68:3-4, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

[42]Id. at 68:5-6, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

[43]Id. at 68:7-8, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

[44]Id. at 68:12-14, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

[45]Id. at 68:18-21, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

[46]Id. at 68:21-72:24, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, pp. 19-20.

pink highlights in her hair and a tattoo of a cartoon character on her left leg near her ankle.[47]   Landry also described the supervisor who the department manager sought out and brought back to witness the interviewer tell Landry that Wal-Mart would get back to her when a job better equipped for her disability was found.[48]   While the EEOC acknowledges that there are multiple possibilities,[49]   the EEOC identified and deposed two managers with a connection to the electronics department who are likely to have been involved in Landry's interview: Kathy Brogden and Dana Everett.[50]   Brogden's timecard shows that she spent the entire workday at Store No. 0400 on July 14, 2015.[51]   Everett, who has a tattoo of a Precious Moments angel on her left leg,[52] testified that she recalled interviewing

---

[47]Id. at 65:25-66:17, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 19.

[48]Id. at 71:9-24, Exhibit A to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 20.

[49]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-1, p. 13 (citing Exhibits 16 (Store No. 0400 Managers), 19 (Store No. 0400 Department Managers), and 20 (Store No. 0400 Personnel Department Associations), Docket Entry No. 53-13, pp. 8-9, 30-32, and 33-34, respectively).

[50]Id. at 15-18 (citing Videoconference Deposition of Kathy Brogden ("Brogden Deposition"), Exhibit B to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-2; and Everett Deposition, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6).

[51]Id. at 16 (citing Exhibit 24 thereto, Docket Entry No. 53-13, p. 165).

[52]Id. (citing Everett Deposition, p. 54:1-23, Exhibit F to
(continued...)

a female candidate with an arm amputation who had a history of working in receiving.[53] Everett also testified that department managers were routinely asked to interview applicants for other departments,[54] that if she had questions during an interview she would step out and ask another manager or a superior,[55] that she would not enter the ratings she gave an interviewee but would take it back to personnel for entry,[56] and that she did not review Wal-Mart's policies or procedures but knew that they were available to her.[57]

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir.

---

[52](...continued)
EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, p. 15).

[53]Id. (citing Everett Deposition, pp. 90:10-91:14, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, p. 24).

[54]Id. (citing Everett Deposition, p. 39:4-24, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, p. 11).

[55]Id. at 17 (citing Everett Deposition, p. 49:4-25, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, p. 14).

[56]Id. (citing Everett Deposition, pp. 40:4-17, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, p. 11).

[57]Id. (citing Everett Deposition, pp. 72:16-73:2, Exhibit F to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-6, pp. 19-20).

2004) (quoting <u>Sandstad v. CB Richard Ellis, Inc.,</u> 309 F.3d 893, 897 (5th Cir. 2002), <u>cert. denied,</u> 123 S. Ct. 2572 (2003)).  <u>See also Nall v. BNSF Railway Co.,</u> 917 F.3d 335, 341 (5th Cir. 2019) ("If an inference is required for evidence to be probative as to an employer's discriminatory animus, the evidence is circumstantial, not direct.").  "If the plaintiff produces direct evidence that discriminatory animus played a role in the employer's adverse employment decision, the burden of persuasion shifts to the defendant who must prove that it would have taken the same action despite any discriminatory animus." <u>Nall,</u> 917 F.3d at 340 (citing <u>Sandstad,</u> 309 F.3d at 896).

"Where a plaintiff offers remarks as direct evidence, [the Fifth Circuit] applies a four-part test to determine whether they are sufficient to overcome summary judgment." <u>Rodriguez v. Eli Lilly and Co.,</u> 820 F.3d 759, 764 (5th Cir. 2016)(quoting <u>Reed v. Neoplast USA, Inc.,</u> 701 F.3d 434, 441 (5th Cir. 2012) (citing <u>Brown v. CSC Logic, Inc.,</u> 82 F.3d 651, 655 (5th Cir. 1996))).

> To qualify as direct evidence of discrimination, workplace comments "must be '1)related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [employment decision at issue]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'"

<u>Id.</u> (quoting <u>Auguster v. Vermilion Parish School Board,</u> 249 F.3d 400, 405 (5th Cir. 2001) (quoting <u>Krystek v. University of Southern Mississippi,</u> 164 F.3d 251, 256 (5th Cir. 1999))).

Citing 42 U.S.C. § 12112 and EEOC Guidance, Wal-Mart argues that the disability-related questions Landry testified she was asked during her interview were questions that an interviewer may permissibly pose to an applicant with a known disability.[58]  Wal-Mart also argues that the alleged statements cannot be construed as direct evidence of disability discrimination because the department manager who allegedly made them would not have been the decision maker regarding Landry's hire,[59] and because the statements were not proximate in time or related to requisitions for any of Landry's stated job preferences.[60]  Citing the Declaration of Larry Gulick, Wal-Mart Store 400 Market Human Resource Manager, and the attachments thereto, Wal-Mart argues that "[i]t would certainly require in inferential leap to prove that Walmart did not hire Landry because of her disability, when she was in fact placed in thirty-six (36) requisitions for positions she sought, after the date of the alleged comment by a non-hiring associate."[61]

---

[58]Defendant's Brief in Support of MSJ, Docket Entry No. 52, pp. 14-15 (citing U.S. Equal Opportunity Commission, Enforcement Guidance: Preemployment Disability-Related Questions and Medical Examinations, Issue Date: October 10, 1995, OLC Control Number: EEOC-CVG-1995-3).  See also https//www.eeoc.gov/laws/guidance/enforcement-guidance-preemployment-disability-related-questions-and-medical)).

[59]Id. at 16 (citing Defendant's MSJ, ¶¶ 28, Docket Entry No. 51, p. 13 (citing Deposition of Larry Gulick, March 10, 2021 ("Gulick March 2021 Deposition"), pp. 137:14-25 and 173:16-18)).

[60]Id.

[61]Id. (citing Defendant's MSJ, ¶¶ 48, 52, Docket Entry No. 51,
(continued...)

-18-

Landry's testimony alone precludes summary judgment by satisfying the four-part test that the Fifth Circuit uses to analyze whether workplace comments constitute direct evidence of discrimination. While the questions that Landry testified the Wal-Mart interviewer asked her regarding her ability to pick up boxes and place them on carts could have been permissible in light of the fact that Landry is obviously missing her right forearm and hand, because Landry responded that she could pick up boxes and place them on carts, the interviewer's statement that Wal-Mart would get back to her when a job better equipped for her disability was found, was both (1) related to Landry's protected class, (2) proximate in time to the employment decision at issue, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue, i.e., the failure to hire Landry.

Relying on Gulick's deposition testimony Wal-Mart contends that the department manager lacked authority to hire an applicant,[62] but Wal-Mart has failed to present evidence that department managers lacked authority either to decide that an applicant would not be hired or to tell an applicant that he or she would not be

_____

[61](...continued)
pp. 19-20, and Declaration of Larry Gulick, Exhibit L to Defendant's Brief in Support of MSJ, Docket Entry No. 51-13, and Exhibit 10 thereto, Docket Entry No. 51-23 (a chart of Store No. 400 Job Requisitions for Landry).

[62]Id.

-19-

hired.   Instead, Wal-Mart has presented evidence showing that in 2015 a department manger should not have told an applicant that they would not be selected for a position:

> Q.    . . . [G]enerally, the hiring process at Walmart, according to policy at least, is there any reason why an hourly [department] manager should be telling an applicant that they're not selected for a position?
>
> A.    They should not, no.
>
> Q.    In other words, that shouldn't happen at least until a salaried manager interviewed?
>
> A.    Correct.
>
> Q.    In terms of policy, at least, correct?
>
> A.    Correct.[63]

Nor has Wal-Mart cited evidence contradicting Landry's testimony that the interview occurred, that after consulting with her supervisor, the department manager told Landry that Wal-Mart would get back to her when a job better equipped for her disability was found, and that the department manager made this statement to Landry in the presence of her supervisor, whom the department manager had sought out and brought to see Landry.

Landry's testimony precludes summary judgment because it is evidence that, if believed, would be sufficient to prove the fact of discriminatory animus without inference or presumption.   See Vance v. Union Planters Corp., 209 F.3d 438, 442 & n. 3 (5th Cir.

---

[63]Gulick March 2021 Deposition, p. 137: 16-25, Docket Entry No. 51-10, p. 22.

2000) (noting that even if the plaintiff "were the only witness to testify about the statements at issue . . . that would not warrant taking the case out of the jury's hands," and citing <u>Portis v. First National Bank of New Albany, Mississippi</u>, 34 F.3d 325, 329-30 n. 10 (5th Cir. 1994) ("The fact that [plaintiff's] case-in-chief consists solely of her own testimony does not prevent her from establishing intentional discrimination.")).

2.    <u>The EEOC Has Cited Circumstantial Evidence that Raises Genuine Issus of Material Fact for Trial</u>

Asserting that

[t]he summary judgment record simply does not establish that, after learning that Landry was disabled and/or discovering the extent of her disability, Walmart removed Landry from consideration for employment opportunities in the requisitions for which she applied, or that it took any adverse employment action against her,[64]

Wal-Mart argues that "[w]ithout evidence of any adverse employment action or that Landry was treated less favorably than non-disabled associates, the EEOC's disability discrimination claim fails."[65] Plaintiff responds that fact issues preclude granting Wal-Mart's MSJ, and that the actions and inactions of Wal-Mart's managers support an award of punitive damages.[66]

---

[64]Defendant's Brief in Support of MSJ, Docket Entry No. 52, p. 11.

[65]<u>Id.</u>

[66]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53,
(continued...)

(a)   Additional Law

A plaintiff relying on circumstantial evidence to raise fact issues for trial on claims of employment discrimination must follow the burden-shifting framework set forth in <u>McDonnell Douglas Corp.</u> <u>v. Green,</u> 93 S. Ct. 1817 (1973).  The EEOC's initial burden under the <u>McDonnell Douglas</u> framework is to establish a prima facie case of discrimination based on Landry's disability.  If the EEOC establishes a prima facie case of disability discrimination, the burden shifts to Wal-Mart to provide a nondiscriminatory reason for failing to hire Landry, after which the EEOC must establish that the reason Wal-Mart offered is merely a pretext for discrimination. <u>Nall,</u> 917 F.3d at 341-42 (citing <u>Williams v. J.B. Hunt Transport,</u> <u>Inc.,</u> 826 F.3d 806, 811 (5th Cir. 2016)).

(b)   Analysis

**(1)   The EEOC Has Established a Prima Facie Case**

(i)   Elements of a Prima Facie Case

The parties disagree on the elements for a prima facie case of disability discrimination under the ADA.  Wal-Mart argues that the court should apply the four-part standard stated in <u>E.E.O.C. v.</u> <u>Chevron Phillips Chemical Co., LP,</u> 570 F.3d 606 (5th Cir. 2009), and a number of other mostly unpublished cases, <u>i.e.,</u> that

---

[66](...continued)
pp. 9, 22-33.

> (a) [Landry] is disabled, has a record of having a
> disability, or is regarded as disabled, (b) she is
> qualified . . ., (c) she was subjected to an adverse
> employment action on account of her disability or the
> perception of her disability, and (d) she was replaced by
> or treated less favorably than non-disabled employees.

Id. at 615 (citing McInnis v. Alamo Community College District, 207
F.3d 276, 279 (5th Cir. 2000)).   The EEOC argues that the court
should apply the three-part standard stated in LHC Group, 773 F. 3d
at 697, which omits the fourth element stated in the Chevron
Phillips and McInnis cases on which Wal-Mart relies.[67]

In LHC Group the Fifth Circuit observed that circuit precedent
consistently required plaintiffs alleging disability discrimination
to prove (1) that they are disabled or perceived to be disabled;
and (2) that they are qualified for the position at issue, but
acknowledged that

> [t]he cases then splinter into three distinct lines
> regarding causal nexus.  One line of cases requires the
> employee to prove "(3) that he was subject to an adverse
> employment decision on account of his disability." Zenor
> [v. El Paso Healthcare System, Ltd.,] 176 F.3d [847,] 853
> [(5th Cir. 1999)]. . . A second line of cases requires
> the employee to prove "(3) he . . . was subject to an
> adverse employment action; and (4) he . . . was replaced
> by a non-disabled person or was treated less favorably
> than non-disabled employees." Burch [v. Coca-Cola Co.,]
> 119 F.3d [305,] 320 [(5th Cir. 1997), cert. denied, 118
> S. Ct. 871 (1998)] (citing Daigle v. Liberty Life
> Ins[urance] Co., 70 F.3d 394, 396 (5th Cir. 1995)).  A
> third line in essence requires an employee to prove nexus
> twice, asking [him] to show "[3] []he was subjected to an
> adverse employment action on account of h[is] disability
> or the perception of h[is] disability, and [4] []he was

---

[67]Id. at 11.  Alternatively, the EEOC argues that the third
element of a prima facie case involving a failure to hire is that
the defendant failed to hire the plaintiff for a position while
continuing to seek other applicants.  Id. at 9.

> replaced by or treated less favorably than non-disabled
> employees." _Chevron Phillips_, 570 F.3d at 615 (citing
> _McInnis_[,] 207 F.3d [at] 279).

773 F.3d at 695.   After analyzing the three lines of cases, the
Fifth Circuit decided to follow the _Zenor_ line of cases, holding
that "[t]o establish a prima facie discrimination claim under the
ADA, a plaintiff must prove: (1) that he has a disability; (2) that
he was qualified for the job; [and] (3) that he was subject to an
adverse employment decision on account of his disability." _Id._ at
697 (citing _Zenor_, 176 F.3d at 853).   In reaching this decision the
Fifth Circuit expressly declined to apply the elements for a prima
facie case stated in _Chevron Phillips_ on which Wal-Mart relies, in
part because

> it requires plaintiffs to prove causation twice.   This
> requirement is inconsistent with _McDonnell Douglas_ and at
> odds with the underlying purpose of anti-discrimination
> legislation — namely, to remove "artificial, arbitrary,
> and unnecessary barriers to employment when the barriers
> operate invidiously to discriminate on the basis of
> racial or other impermissible classification."

_Id._ at 696 (quoting _McDonnell Douglas_, 93 S. Ct. at 1823 (quoting
_Griggs v. Duke Power Co._, 91 S. Ct. 849, 853 (1971))).   _Accord
Burch_, 119 F.3d at 313 (noting that the ADA is "designed to remove
barriers which prevent qualified individuals with disabilities from
enjoying the same employment opportunities that are available to
persons without disabilities").   Accordingly, the court concludes
that the elements for a prima facie case of disability
discrimination are those stated in the three-part standard employed
in _LHC Group_, 773 F.3d at 697.

                (ii) The EEOC Has Cited Evidence Capable of
                    Establishing that Landry Suffered an
                    Adverse Employment Action

"Defendant does not dispute element one that Landry had a disability or a perceived disability or element two that Landry was qualified for the positions for which she applied."[68]  Wal-Mart argues that the EEOC cannot establish a prima facie case of disability discrimination because the EEOC cannot show that Landry was subjected to an adverse employment action on account of her actual or perceived disability.[69]  Adverse employment actions are "ultimate employment decisions such as hiring, granting leave, discharging, promoting, . . . [and] compensating." Thompson v. Microsoft Corp., 2 F.4th 460, 470 (5th Cir. 2021) (quoting Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004)).  The EEOC responds that "because Walmart has conceded the first two elements of the EEOC's claim, the only element of proof remaining is whether the EEOC has presented genuine issues of material fact that Walmart failed to hire Landry for a position while continuing to seek other applicants."[70]  See McDonnell Douglas, 93 S. Ct. at 1824 (discussing a Title VII failure to hire claim).

---

[68]Defendant's Brief in Support of MSJ, Docket Entry No. 52, p. 17 n. 6.

[69]Id. at 18-20.  See also Defendant's Reply, Docket Entry No. 55, p. 6.

[70]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, p. 9.

Citing the Gulick Declaration, and the attachments thereto, Wal-Mart argues that the only application fully completed by Landry was effective July 8, 2015; applicants, including Landry, would only have been considered for jobs that open after the effective date of their applications, for which they have expressed an interest, and for which they meet eligibility requirements. Wal-Mart argues that Landry expressed an interest in the positions of cashier, service desk, apparel sales, fitting room, jewelry, and shoe sales coordinator, but did not express an interest in a stocker position, and therefore could not have been considered for that position.[71]

Wal-Mart's argument that Landry did not suffer an adverse employment action because she would not have been considered for positions for which she did not show a preference is contradicted by Landry's testimony that Wal-Mart contacted her to schedule an interview for a position, that Landry scheduled and appeared for an interview at Store #0400, that the interviewer told her that the position for which she interviewed involved picking up boxes and placing them on carts, and that after consulting with her

---

[71]Defendant's Brief in Support of MSJ, Docket Entry No. 52, pp. 9-11 (citing Defendant's MSJ, ¶¶ 10, 31-34, Docket Entry No. 51, pp. 9, 14-15, and Declaration of Larry Gulick, Exhibit L to Defendant's Brief in Support of MSJ, Docket Entry No. 51-13, pp. 3 ¶ 3, 5 ¶¶ 10-11, 13, and Exhibits 4 (Walmart's Hiring Process), 8 (Landry's signed Application for Employment), 9 (Chart of Landry's Application), and 10 (Store No. 400 Job Requisitions for Landry)). See also id. at 18-20.

supervisor, the interviewer told Landry that Wal-Mart would contact

her when a position better equipped for her disability was found,

but Wal-Mart never contacted her.   Wal-mart's argument is also

contradicted by the fact that

> Walmart produced to the EEOC the contents of a folder
> containing Landry's hand-signed job application, her pre-
> screen answers, an application addendum, her scheduling
> availability form printed on July 13, 2015, the
> acceptable documents portion of an I-9 form, Walmart's
> standard hourly manager questions, and the exceeds
> expectations rating the interviewing hourly manager gave
> Landry which establishes a material factual dispute
> regarding Landry's interview and rejection for the
> position at issue in this suit.[72]

Moreover, as the EEOC argues,

> Wal-Mart's own employee report shows that from mid-July
> 2015 through the end of August 2015, Walmart's managers
> hired approximately 50 new employees. (Ex. 18) A number
> of those employees were hired into positions which
> involved loading and unloading boxes (Ex. 18), the job
> duty described by Landry's interviewer. (Ex. A at 67:25,
> 68:1-9).  Testimonial evidence identified a variety of
> positions, including the Stocker . . . as involving
> loading and unloading boxes. . . In fact, when Jennifer
> Vivian, a former department manager was asked this
> question, she said if you are talking about loading and
> unloading boxes off of pallets, the positions involved
> would include "any department manager, any sales
> associate, anyone who worked on the floor anywhere,
> including I would even say cashiers sometimes had to load
> and unload boxes because they had the boxes of bags."[73]

---

[72]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, p. 21.

[73]Id. at 20 (quoting Videoconference Oral Deposition of Jennifer Vivian ("Vivian Deposition"), pp. 71:23-72:2, Exhibit I to EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53-9, p. 19).

Because the EEOC has cited evidence from which a reasonable fact finder could conclude that in July of 2015 Landry applied for multiple positions at Wal-Mart, that Landry received "exceeds expectations" ratings during an interview, that after questioning Landry's ability to lift boxes in light of her disability, the interviewer told Landry that Wal-Mart would get in touch with her when a job better equipped for her disability was found, and that from mid-July 2015 through the end of August 2015, Wal-Mart hired many new employees, some for jobs that involved stocking duties, but that Wal-Mart never got in touch with Landry, the court concludes that the EEOC has established a prima facie case of disability discrimination in violation of the ADA by citing evidence from which a reasonable fact finder could conclude that Landry suffered an adverse employment action of not being hired on account of a disability.

**(2)   Wal-Mart Has Articulated a Legitimate, Non-Discriminatory Reason for Failing to Hire Landry for a Stocker Position**

Wal-Mart argues that it is entitled to summary judgment on the EEOC's claims because Landry was not hired for a legitimate, non-discriminatory reason, *i.e.*, "she was not hired for a position to which she did not apply and for those that she did, she was considered for all [36] positions without regard to her disability/perceived disability."[74]   Wal-Mart argues that

---

[74]Defendant's Brief in Support of MSJ, Docket Entry No. 52,
(continued...)

> [c]ontrary to the EEOC's subjective belief, Walmart's
> requisition data shows that: 1) on July 17, 2015, 4 days
> **after** the date of the alleged interview, Landry was
> placed in the 36 requisitions; 2) Landry was placed in
> Tier 2 status, along with all other applicants who did
> not qualify for Tier 1 status; 3) Landry's disability was
> not identified in the CPS that housed her application
> data; 4) Landry was considered for all 36 of those
> positions equally with other applicants; 5) there was no
> data entered in CPS for Landry's 36 requisitions that
> would have caused Landry not to be considered for each
> and every requisition; and 6) Landry was considered for
> all 36 positions without regard to her
> disability/perceived disability.[75]

Wal-Mart has met its burden of production to state a legitimate, non-discriminatory reason for failing to hire Landry for the stocker position for which Wal-Mart told the EEOC Landry was interviewed, i.e., that Landry had not applied for that position. But Wal-Mart has failed to state any reason for failing to hire Landry for any of the 36 positions for which Wal-Mart contends Landry was considered, but neither interviewed for nor hired. Accordingly, the burden of production shifts back to the EEOC to cite evidence that would allow a reasonable fact finder to find that Wal-Mart's stated reasons for failing to hire Landry for the stocker position for which was interviewed are pretextual.

---

[74](...continued)
p. 21. See also id. at 23 (asserting that "after the date of the alleged comment, the undisputed summary judgment [evidence] establishes that Landry was subsequently placed in and considered for thirty-six requisitions to which she applied (Walmart's MSJ, ¶ 48)").

[75]Defendant's Reply, Docket Entry No. 55, p. 17.

### (3)   The EEOC Has Raised Genuine Issues of Material Fact as to Pretext

Wal-Mart argues that the EEOC

> has failed to point to any competent summary judgment
> evidence to establish a question of fact as to the
> veracity of why Landry was not hired by Walmart for the
> 36 positions for which she was eligible for
> consideration.  The summary judgment record simply does
> not establish that afer a non-hiring manager allegedly
> learned that Landry was disabled and/or discovering the
> extent of her disability, Walmart removed Landry from
> consideration for employment opportunities in the
> requisitions for which she applied. [The EEOC] cannot
> carry its burden of showing a factual dispute under a
> pretext or mixed motive analysis.[76]

"A plaintiff may show pretext either through evidence of disparate treatment or by showing that [Defendant's] proffered explanation is false or unworthy of credence." <u>Caldwell v. KHOU-TV,</u> 850 F.3d 237, 242 (5th Cir. 2017) (quoting <u>Jackson v. Cal-Western Packaging Corp.,</u> 602 F.3d 374, 378-79 (5th Cir. 2010)). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." <u>Id.</u> (quoting <u>Laxton v. Gap Inc.,</u> 333 F.3d 572, 578 (5th Cir. 2003)).  At the summary judgment stage, the EEOC only needs to raise "a genuine issue of fact regarding pretext." <u>Id.</u>  The EEOC argues that Wal-Mart's stated reason for failing to hire Landry is false or unworthy of credence.  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves,</u> 120 S. Ct. at 2109.

---

[76]<u>Id.</u>

Wal-Mart has not been consistent with its reasons for failing to hire Landry.  Although Wal-Mart now claims that Landry was not hired for the stocker position for which Wal-Mart told the EEOC Landry had been interviewed because Landry had not expressed a preference for that position in her application materials, in its first position statement to the EEOC, Wal-Mart stated that Landry was interviewed — but not hired — for a stocker position because she was not the most qualified candidate.  The court concludes that the EEOC has produced enough evidence to question the veracity of Wal-Mart's stated reasons for failing to hire Landry.  When, as here, an employer offers inconsistent explanations for its employment decision, the jury may infer that the employer's proffered reasons are pretextual.  See Caldwell, 850 F.3d at 242. See also Gee v. Principi, 289 F.3d 342, 348 (5th Cir. 2002) (recognizing that "a factfinder may infer the ultimate fact of [discrimination] from the falsity of the explanation"); Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 n. 11 (5th Cir. 2007) ("an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual"). Accordingly, the court concludes that genuine disputes of material fact regarding whether Wal-Mart's stated reasons for failing to hire Landry are pretextual require denial of Defendant's MSJ as to the failure to hire claim asserted on Landry's behalf.

-31-

     3.   <u>The EEOC Has Raised Genuine Issues of Material Fact for Trial Regarding Entitlement to Punitive Damages</u>

Wal-Mart may be subject to punitive damages if the EEOC demonstrates that Wal-Mart engaged in discriminatory practices with malice or reckless indifference to Landry's federally protected rights. 42 U.S.C. § 1981a(b). Citing <u>Green v. Administrators of the Tulane Educational Fund,</u> 284 F.3d 642 (5th Cir. 2002), Wal-Mart argues that it is entitled to summary judgment because there is no evidence to support an award of punitive damages.[77]  In <u>Green</u> the Fifth Circuit held that an employer demonstrates a good faith effort to comply with Title VII by creating a written policy prohibiting sexual harassment and outlining complaint procedures, disseminating the policy, and conducting training to educate employees about the policies. <u>Id.</u> at 645. Wal-Mart argues that

> uncontradicted evidence in this case demonstrates that [Wal-Mart] maintained policies prohibiting discriminatory conduct based upon disability in accordance with the ADA. The uncontradicted evidence contained in the record also conclusively establishes that Defendant disseminated its policies prohibiting discriminatory conduct to all of its associates and provided extensive training on the ADA to all of its hourly and salaried managers. Finally, the uncontradicted evidence in the record demonstrates that [Wal-Mart] provided appropriate avenues for its employees and applicants to lodge a complaint of discrimination.[78]

Wal-Mart argues that the statement regarding Landry's disability that Landry attributes to the interviewing department manager

---

    [77]Defendant's Brief in Support of MSJ, Docket Entry No. 52, pp. 24-25.

    [78]<u>Id.</u> at 24.

was wholly inconsistent with the extensive training and directives provided by Walmart with regard to the ADA. Based on the uncontradicted evidence in the record and giving all reasonable inferences to Plaintiff, there is no evidence to dispel Defendant's assertion that it made a good faith effort to prevent discrimination in the workplace. Therefore, [Wal-Mart] is entitled to judgment as a matter of law as to Plaintiff's claim of punitive damages.[79]

The EEOC argues that Wal-Mart's contention that its written policies and extensive employee training evidence a good faith effort to comply with federal anti-discrimination law is belied by evidence that Wal-Mart had no ADA-specific learning module, and that there is no evidence that either Brogden or Everett, the managers likely to have been involved in the underlying events, were trained on Wal-Mart's anti-discrimination policies until after Landry's interview.[80]   Citing EEOC v. Wal-Mart Stores, Inc., 202 F.3d 281 (10th Cir. 1999) (unpublished), the EEOC argues that "Walmart has tried and lost similar arguments in the past, even in one case involving a traumatic amputee applicant."[81]

If a jury finds that Wal-Mart discriminated against Landry on account of her disability in violation of the ADA, and that Brogden

---

[79]Id. at 24-25.

[80]EEOC's Opposition to Defendant's MSJ, Docket Entry No. 53, p. 33 (citing Brogden Deposition, p. 65:9-25, Exhibit B, Docket Entry No. 53-2, p. 18; Everett Deposition, p. 72:16-73:2, Exhibit F, Docket Entry No. 53-6, p. 19; and Training Records for Kathy Brogden, Exhibit 22, Docket Entry No. 53-13, pp. 76-127, especially 84-85 listing training on employment issues).

[81]Id. at 32-33.

and Everett were involved in the underlying events, the evidence cited by the EEOC is sufficient to raise genuine issues of material fact as to whether Wal-Mart engaged in discriminatory practices with malice or reckless indifference to Landry's federally protected rights by failing to enforce its written, anti-discrimination policies. See Green, 284 F.3d at 654 (citing Kolstad v. American Dental Association, 119 S. Ct. 2118, 2129-30 (1999) (existence an anti-discrimination policy is not sufficient to avoid punitive damages if the policy are not enforced)).

### III. **Motions in Limine**

Citing Federal Rule of Civil Procedure 37(c), and Federal Rules of Evidence 401-404, 408, 411, 601-02, 701, 801-02, both the EEOC and Wal-Mart move the court to instruct the opposite party, as well as counsel and witnesses for the opposite party, to refrain form making any mention or reference to a number of matters without first approaching the bench and obtaining a ruling from the court, outside the presence and hearing of all prospective jurors and the jurors ultimately selected to try this case. The court's usual practice is to rule on motions in limine at docket call because preparation of the Joint Pretrial Order often causes the parties to modify their arguments and narrow the issues to be presented at trial in ways that lead to agreements on previously disputed issues and reduce or eliminate the need for motions in limine. Accordingly, the motions in limine will be denied without prejudice to being reurged at docket call.

-34-

### IV.   Conclusions and Order

For the reasons stated in note 1, above, the EEOC's request to strike the Defendant's MSJ, is **DENIED**.

For the reasons stated in § II, above, the court concludes that Wal-Mart is not entitled to summary judgment.   Accordingly, Defendant's Motion for Summary Judgment, Docket Entry No. 51, is **DENIED**.

For the reasons stated in § III, above, Defendant's Motion in Limine, Docket Entry No. 54, is **DENIED WITHOUT PREJUDICE** to being reurged at docket call, and the EEOC's Motion in Limine, Docket Entry No. 56, is **DENIED WITHOUT PREJUDICE** to being reurged at docket call.

The joint pretrial order must be filed by December 3, 2021, and docket call will be held on December 10, 2021, at 3:00 p.m. in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 5th day of November, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE